Filed 3/27/15  Soleimani v. Brian J. Kramer , P.C. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAHSHID SOLEIMANI, | B251216 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC492123) |
| v. | |
| BRIAN J. KRAMER, P.C. | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Law Office of Amy Ghosh and Amy Ghosh for Plaintiff and Appellant.

Portugal Law Office, APC and Natt Portugal; Brian J. Kramer, P.C. and Brian J. Kramer for Defendant and Respondent.

After becoming dissatisfied with her attorney's representation, plaintiff Mahshid Soleimani initiated nonbinding fee arbitration under the Mandatory Fee Arbitration Act (MFAA), Business and Professions Code, sections 6200 et seq. The arbitrators found in favor of attorney Brian J. Kramer[1] on all issues, and Soleimani sought a trial de novo. Kramer then petitioned to compel binding arbitration of Soleimani's claims under the arbitration provision of Kramer's retainer agreement, and the trial court granted the petition. After a hearing, the arbitrator found in Kramer's favor, awarding Kramer all of his fees, plus interest, and the trial court confirmed the award.

Soleimani appeals, contending that the trial court erred in compelling arbitration and confirming the arbitration award because her claims against Kramer were not within the terms of the parties' arbitration agreement, among other things. We conclude that Soleimani has waived each of her appellate arguments by failing to raise them in the trial court, and in any event they are without merit. We thus affirm the judgment and order confirming the arbitration award.

### FACTUAL AND PROCEDURAL BACKGROUND

### I.     Background

In September 2010, Soleimani retained Kramer, a family law attorney, to represent her in her marital dissolution action. Soleimani initially retained Kramer solely to oppose a motion to enforce a settlement agreement entered into in the dissolution action, but she later broadened the scope of Kramer's engagement to include other matters, including the preparation of a request for an order to show cause against her former husband. Six months later, in March 2011, Soleimani terminated Kramer's engagement and substituted herself in as counsel of record.

The retainer agreement between Soleimani and Kramer provided for mediation and arbitration of disputes, as follows:

---

[1]     Throughout this opinion, we refer to Brian J. Kramer and/or his professional corporation as Kramer.

2

"13.  Resolving Disputes Between Client and Law Firm:

"(a)  Notice and Negotiation:  If any dispute between Client and Attorney arises under this agreement, both Attorney and Client agree to meet and confer within 10 days of written notice by either Client or Attorney that the dispute exists.  The purpose of this meeting and conference will be to negotiate a solution short of further dispute resolution proceedings.

"(b)  Mediation:  If the dispute is not resolved through negotiation, Client and Attorney shall attempt, within 15 days of failed negotiations, to agree on a neutral mediator whose role will be to facilitate further negotiations within 15 days.  If Attorney and Client cannot agree on a neutral mediator, they shall request that the local bar association or community-based nonprofit mediation center select a mediator.  The mediation shall occur within 15 days after the mediator is selected.  Attorney and Client shall share the costs of mediation, provided that the payment of costs and any attorney fees may be mediated.  Nothing in this provision shall constitute a waiver of Client's rights to State Bar arbitration or a trial de novo after a State Bar fee arbitration.

"(c)  Fee Arbitration:  If Client and the Law Firm have a dispute involving attorney's fees and costs under California law, Client has a right to request that the dispute be determined first by non-binding arbitration administered by a local bar association, including the Beverly Hills and the Los Angeles County Bar Associations.  If non-binding arbitration is selected and either of us is unhappy with the result, the dispute shall be adjudicated by way of mandatory and final arbitration by a retired judicial officer who presided over a family law trial court, under either (a) the Commercial Rules of the American Arbitration Association ('AAA'), in Los Angeles, California, or (b) with the then existing Rules of Practice and Procedure of Advantage Arbitration and Mediation Services, LLC ('AAMS') in Los Angeles, California.  The party first in time to file and serve any arbitration [demand] may elect to proceed either before the AAA or the AAMS.  The arbitration Judgment on the Award may be entered in any court having jurisdiction.  If we both agree that the local bar association arbitration shall be binding, then any award made by the arbitrator(s) will be binding on both of us.  Judgment on the

3

Award may be entered in any court having jurisdiction. The arbitration dispute provision is a waiver by each of us to a trial in a court of law and by a jury trial. This agreement to arbitrate is not intended to abrogate your right to require non-binding fee arbitration pursuant to California Business and Professions Code section 6200-06." (Emphasis omitted.)

## II. Soleimani's Demand for Mediation and Non-Binding Fee Arbitration

In November 2011, Soleimani filed a demand for mediation and non-binding fee arbitration with the Los Angeles County Bar Association (LACBA). Mediation was not successful, and in July 2012, the parties participated in a one-day hearing before a three-member LACBA arbitration panel. Kramer requested unpaid fees of $7,802.18; Soleimani objected to Kramer's fees, challenging "the quantity of the work expended by [Kramer] and the charges therefor." The arbitrators described the matters placed at issue as follows: "1. [Kramer's] lack of knowledge of a court error that he had no reason to know about. [¶] 2. The actual time expended by [Kramer] prior to being discharged by [Soleimani]. [¶] 3. Whether [Kramer] acknowledged all payments made by [Soleimani]."

At the conclusion of the hearing, the arbitrators found that the services rendered by Kramer were "consistent with the fee agreement and were reasonably necessary" and that "[Soleimani]'s complaint that [Kramer was] not acting soon enough after a court error is misplaced and not determinative in this matter." The arbitrators awarded Kramer all of his unpaid fees, plus interest.

## III. Soleimani's Complaint and Kramer's Arbitration Petition

Soleimani filed the present action against Kramer on September 17, 2012. The complaint alleges that in late October 2010, Soleimani's former husband lodged a proposed order that, if signed by the court, would allow the court clerk to sign deeds to transfer properties on Soleimani's behalf. Soleimani did not want the clerk to sign deeds on her behalf, and so on November 1, 2010, she and her former husband stipulated to an agreement requiring deeds to be held, not recorded. The stipulation was signed by the parties and filed with the court on November 1. However, on November 19, without

4

Soleimani's knowledge, the court signed the proposed order. Soleimani contended that Kramer was aware that the proposed order had been signed but intentionally kept this information from her. Thereafter, "[f]rom the period between November 1, 2010 to February 15, 2011, [Kramer] proceeded to misrepresent the facts of the case to Plaintiff and to provide unnecessary legal services to Plaintiff, claiming that the services were necessary to enforce the terms of the then moot Stipulation. [¶] . . . [¶] By the time Plaintiff was notified by [Kramer] that the [proposed order] had been entered as an order of the Court, Plaintiff had expended copious amounts of monetary and other resources to compel unnecessary action by Spouse, in reliance on the misrepresentations of [Kramer]." Soleimani alleged these actions gave rise to four causes of action: fraud, breach of fiduciary duty, breach of legal fee agreement, and breach of the covenant of good faith and fair dealing.

On October 16, 2012, Kramer filed and served a Demand for Arbitration before AAMS. The following day, Kramer petitioned the superior court to compel arbitration of the matters set forth in Soleimani's complaint. The petition asserted that all of Soleimani's claims came within the agreement to arbitrate, noting that Soleimani did not allege any malpractice claims and, in any event, any such claims would be time-barred.

Soleimani filed opposition and a motion to strike the petition to compel arbitration. She contended that the petition must be denied because her fraud claims fell outside the purview of the arbitration agreement: "[T]he Fee Arbitration clearly states that 'if Client and Law Firm have a dispute involving *attorney's fees and costs* (emphasis added)' that they will then be allowed to seek arbitration. The current dispute arises not from a fee dispute but rather [from] the intentional misrepresentation by [Kramer] in order to procure further monetary gain from Plaintiff."

On November 13, 2012, the trial court granted Kramer's petition to compel binding arbitration. In pertinent part, the court's written order said: "The dispute between the parties involves attorneys' fees and is embraced in their agreement to refer such disputes to binding arbitration. Plaintiff's argument that [her] allegations of fraud take the dispute outside the parties' agreement is not persuasive. Regardless of [her]

5

defenses and allegations, the dispute involves attorneys' fees and is therefore subject to the parties' agreement to arbitrate. . . . [¶] The court therefore orders the parties to binding arbitration in accordance with their agreement and removes this case from its civil active list unless and until either side moves to confirm or to vacate the arbitration award."

## IV.    Arbitration Award

Following an arbitration hearing, arbitrator Keith Clemens issued an award on April 22, 2013, which was superseded by an amended award on April 24. The arbitrator found that Kramer was entitled to recover the unpaid balance of his legal services bills in the amount of $7,802.18, plus interest ($1,641.67) and costs of $4,863.18. The arbitrator said the award covered all issues relating to attorney fees and costs arising out of Kramer's representation of Soleimani, "including all defenses which could be raised by Soleimani against Kramer's claims . . . for unpaid attorney fees and costs. These issues include the claims asserted by Kramer in the Demand for Arbitration for unpaid attorney fees allegedly owed by Soleimani to Kramer and filed by Kramer before AAMS . . . and the claims asserted by Soleimani in the Complaint filed on September 17, 2012, . . . which claims would, if affirmed, provide either a partial or total defense to Kramer's claims for unpaid attorney fees and costs and would entitle Soleimani to affirmative relief."[2]

The arbitrator noted that Soleimani had many specific objections and complaints about Kramer's conduct, but concluded "by a preponderance of the evidence that none of them are valid or constitute either a basis for rejecting some or all of Kramer's charges for legal services or for recovery of some or all of the fees previously paid to Kramer by Soleimani on the grounds of fraud, breach of fiduciary duty, breach of the legal fee

---

[2]    The arbitrator noted, however, that it "is not ruling on whether this binding arbitration award effectively ends the Civil Case. That is beyond the scope of the issues submitted to binding Arbitration. The court in the Civil Case, not the Arbitrator, has the power to determine the effect of this Award of Arbitrator in Binding Arbitration on the Civil Case."

6

agreement between Kramer and Soleimani, breach of the covenant of good faith and fair dealing, or any other legal ground." Further, while the arbitrator found that Soleimani had grounds "for feeling aggrieved by what apparently happened in the courthouse starting on November 1, 2010, . . . Kramer [was] not responsible for what transpired." In support, the arbitrator made the following findings of fact:

"24. . . . The question for the Arbitrator is whether Kramer bears any responsibility for [the trial court's premature signing of the proposed order in the family law case] . . . . If Kramer does not bear any responsibility for these events, either because of action on his part or failure to act when Kramer should have acted, that would affect both Kramer's claim for the unpaid balance of his fees and Soleimani's claim for a refund of some or all of the fees she actually paid and other damages.

"25. Soleimani contends that Kramer knew that the court had signed the Proposed Order [o]n November 19, 2010 or at least he knew that before he notified Soleimani on February 15, 2011, that the court had in fact signed and entered the Proposed Order on November 19, 2010. Soleimani contends that as a consequence of Kramer withholding that knowledge from Soleimani, Kramer proceeded to provide unnecessary legal services to Soleimani. Soleimani contends that Kramer had assured Soleimani from November 1, 2010, until about February 15, 2011, that the November 1, 2010, Stipulation and Order was the operative order. Soleimani contends that Kramer's conduct constituted fraud, a breach of his fiduciary duty to Soleimani, a breach of the parties' written fee agreement, and a breach of the covenant of good faith and fair dealing. Soleimani contends she is entitled to a refund of the fees she paid Kramer at least from soon after November 1, 2010, and that she does not owe additional fees to Kramer.

"26. Kramer, by contrast, contended that the signing of the Proposed Order on November 19, 2010, was a 'court error.' More critically, Kramer contended that he did not learn that the court had signed and filed the Proposed Order on November 19, 2010, until he received an email from [opposing counsel] on February 15, 2011.

7

"27.  The Arbitrator finds that Kramer did not know that the court had signed and filed the Proposed Order on November 19, 2010, until Kramer received an email on February 15, 2011, from [opposing counsel].  The Arbitrator finds that Kramer had no reason to believe that the Proposed Order would be signed and filed by the court and was surprised to learn that it had been signed and filed.  The Arbitrator therefore finds that Kramer did not fail to notify Soleimani of the fact that the court had signed and filed the Proposed Order on November 19, 2010, immediately upon his learning of that fact, and Kramer did not delay notifying Soleimani of that fact once Kramer knew that fact.

"28.  The Arbitrator finds no professional conduct by Kramer in the [family law case] that appears to be below the standard of care expected of a family law attorney practicing in the Central District of Los Angeles.  The Arbitrator finds no basis for blaming Kramer or holding Kramer liable for not discovering what had transpired in the [family law case] after November 1, 2010, with the signing and filing of the Proposed Order on November 19, 2010, or the signing of deeds and other documents by the clerk on behalf of Soleimani.

"29.  The Arbitrator finds that the services provided by Kramer to Soleimani from the inception of the attorney-client relationship until it was terminated on March 15, 2011 were reasonably necessary and were within the scope of the parties' written fee agreement and expansion of the scope of services after the initial signing of the fee agreement.  The Arbitrator finds that the reasonable value of his legal services, including costs, was $36,802.18.

"30.  The Arbitrator finds that Soleimani has claimed that certain pleadings, either were not filed or are missing from the court file . . . .  The Arbitrator has found in the exhibits and documents provided to the Arbitrator conformed copies of the pleadings, showing them to have been filed as represented by Kramer. . . .

"31.  The Arbitrator is perfectly prepared to believe Soleimani's claims that various pleadings are not to be found in the court file or that the case summary doesn't show all pleadings.  The Arbitrator finds that all of that is a shameful and endemic problem for which the court bears responsibility, not Kramer."

8

## V. Petitions to Confirm and Vacate Arbitration Award

Kramer filed a petition to confirm the arbitration award on April 26, 2013, to which Soleimani did not file any opposition. Soleimani filed petitions to vacate the arbitration award on May 13, and again on June 17, 2013; Kramer filed opposition on July 26, 2013.

On August 8, 2013, the trial court granted the petition to confirm the arbitration award and denied the petitions to vacate the arbitration award. Judgment was entered August 22, 2013, and notice of entry of judgment was served August 29, 2013. Soleimani timely appealed.

## DISCUSSION

## I. Soleimani Forfeited Her Appellate Claims by Failing to Raise Them in the Trial Court

Soleimani makes at least five separate arguments on appeal—(1) her causes of action were beyond the scope of the arbitration agreement, (2) the trial court's reasoning was erroneous, (3) Soleimani was substantially prejudiced by the arbitrator's failure to consider material evidence and to postpone the hearing, (4) the court's judgment is "facially incorrect," and (5) the trial court's record "is rife with errors, and demonstrates that the proceedings were improperly convened such that Soleimani did not receive due process." Soleimani raised none of these arguments in the trial court in support of her petition to vacate. Indeed, in the trial court Soleimani did not urge *any* legal basis for vacating the arbitration award. Instead, she reargued the facts of the case, urging as follows: "Soleimani respectfully rejects the findings of the Arbitrator. . . . The question becomes what did in fact Kramer kn[o]w? Why the family law attorney, who the Arbitrator has found to be entitled to receive tens of thousands [of] dollars for his services, has failed to know the correct order of the court? as it is claimed by him? . . . [¶] Soleimani requests for the Arbitration Award to be vacated. The process of discovery is essential here. The court presently has no knowledge of what emails were exchanged between Slevin [Soleimani's former husband's attorney] and Kramer.

9

Deposing Kramer under oath and perhaps more importantly the deposition of third parties, especially Slevin, is the only proper avenue to bring all the facts to light."

" '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court. [Citation.]' (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26; see also *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178: 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.') We will therefore 'ignore arguments, authority, and facts not presented and litigated in the trial court.' (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73.) Such arguments raised for the first time on appeal are generally deemed forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2.)" (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.)

Although she had the opportunity to do so, Soleimani did not raise in the trial court any of the contentions she now makes to support her claim that the arbitration award should have been vacated. Accordingly, she has forfeited each of these arguments, and the order confirming the arbitration award and judgment must be affirmed on that basis.

## II.     The Trial Court Properly Granted the Petitions to Compel Arbitration and to Confirm the Arbitration Award

Although we have concluded that Soleimani has forfeited her appellate claims, we address those claims briefly on the merits. None has merit.

### A.     *The Trial Court Did Not Err in Granting Kramer's Petition to Compel Arbitration*

Soleimani contends the trial court erred in compelling arbitration because her claims were beyond the scope of the arbitration agreement. Our review is de novo. (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82.)

The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) compels the enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health*

10

*Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 97 (*Armendariz*).) Section 1281.2 states that, except in situations not present here, "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court *shall order* the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." (Italics added.)

As the party opposing arbitration, it was Soleimani's burden "to ' " 'demonstrate that [the] arbitration clause *cannot* be interpreted to require arbitration of the dispute.' " [Citation.] In other words, "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 414.)' (*Titolo v. Cano* (2007) 157 Cal.App.4th 310, 316-317.)" (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 738.) " 'Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " (*Ibid*.; see also *United Transportation Union v. Southern Cal. Rapid Transit Dist*. (1992) 7 Cal.App.4th 804, 808 [same].)

Here, the arbitration agreement unquestionably required arbitration of Soleimani's claims.[3] The agreement provided that if Soleimani and Kramer had a dispute "involving

---

[3]    Contrary to Kramer's suggestion, Soleimani's challenge to the order compelling arbitration is cognizable in this appeal from the judgment confirming the arbitration award. " 'An order to compel arbitration is an interlocutory order which is appealable only from the judgment confirming the arbitration award, or in certain exceptional situations is reviewable by writ of mandate. . . .' . . . 'If a trial court compels arbitration. . . , the party resisting arbitration may seek review of the ruling on appeal from an order that confirms the award. . . . If the arbitration process is found to be invalid, the responsibility for a waste of resources would then lie with the trial court, not the litigant . . . .' . . . ' "The rationale of this rule is that the order compelling arbitration is interlocutory in nature and works no hardship on the litigant because the party who objects to arbitration may win at the arbitration hearing, and if he does not, the issue is

11

attorney's fees and costs under California law," Soleimani had the right to request that the dispute "be determined first by non-binding arbitration administered by a local bar association, including the Beverly Hills and the Los Angeles County Bar Associations." If either party was unhappy with the result of the non-binding arbitration, "the dispute shall be adjudicated by way of mandatory and final arbitration by a retired judicial officer who presided over a family law trial court."

Under the plain language of the arbitration agreement, therefore, disputes subject to binding arbitration (under the California Arbitration Act) were coextensive with those subject to nonbinding fee arbitration under California law (as codified in the Mandatory Fee Arbitration Act (MFAA), Business and Professions Code, sections 6200 et seq.). The MFAA provides that nonbinding fee arbitration is available for disputes "concerning fees, costs, or both, charged for professional services by members of the State Bar." (Bus. & Prof. Code, § 6200, subd. (a).) Arbitrators acting pursuant to the MFAA may determine the merits of claims concerning unpaid attorney fees; they may also award the client "a refund of unearned fees, costs, or both previously paid to the attorney." (Bus. & Prof. Code, § 6203, subd. (a).) And, although the MFAA arbitrator may not award clients "affirmative relief, in the form of damages or offset or otherwise, for injuries underlying the claim" (Bus. & Prof. Code, § 6203, subd. (a)), evidence relating to claims of professional misconduct is admissible in MFAA arbitration "to the extent that those claims bear upon the fees, costs, or both, to which the attorney is entitled." (*Ibid*.; see also *Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 286.) In other words, although the MFAA arbitrator may not award damages for professional misconduct, he or she may receive evidence and make findings of fact concerning claims of professional misconduct if such claims are relevant to the merits of an attorney fee dispute.

In the present case, although Soleimani's complaint alleged attorney malfeasance, it did so in the context of suggesting that Kramer intentionally inflated his legal bills, and

---

reviewable on appeal from the order of confirmation." ' [Citation.]" (*Peleg v. Neiman Marcus Group, Inc*. (2012) 204 Cal.App.4th 1425, 1437-1438.)

12

thus that Soleimani should not be required to pay them.  Soleimani's allegations included the following:

"From the period between November 1, 2010 to February 15, 2011, [Kramer] proceeded to misrepresent the facts of the case to Plaintiff *and to provide unnecessary legal services to Plaintiff*, claiming that the services were necessary to enforce the terms of the then moot Stipulation."

"In addition, [Kramer] prepared an Order to Show Cause and Affidavit for Contempt (the 'Contempt OSC') in order to compel Plaintiff's Spouse to comply with the terms of the Stipulation. . . .  [Kramer] admitted to failing to timely serve Spouse with this Contempt OSC, *causing additional unnecessary billing by* [*Kramer*]."

"By the time Plaintiff was notified by [Kramer] that the [proposed order] had been entered as an order of the Court, *Plaintiff had expended copious amounts of monetary and other resources to compel unnecessary action by Spouse*, in reliance on the misrepresentations of [Kramer]."

"[Kramer] knew that the [proposed order] had been made a final order of the court and intentionally concealed this fact from Plaintiff *in order to continue billing Plaintiff for unnecessary legal services*. . . .  [Kramer] represented to Plaintiff on multiple occasions that the work [he was] doing to enforce the terms of the Stipulation was necessary. . . ."

"Plaintiff, at all times relevant, was ignorant of [Kramer's] fraudulent conduct as herein alleged.  In reasonable reliance on said conduct, Plaintiff allowed [Kramer] to continue representing her."

"[Kramer] breached [his] fiduciary duties to gain unfair advantage over Plaintiff *by misleading Plaintiff to conclude that all or substantial part of thousands of dollars in attorney's fees* [*he was*] *charging Plaintiff were necessary to enforce the Stipulation*." (Italics added.)

In view of these allegations, there can be no doubt that, regardless of what Soleimani *called* her causes of action, they addressed, at least in significant part, the parties' competing claims about whether Kramer was entitled to be paid for the work he

13

performed on Soleimani's behalf. Because such claims were within the plain language of the parties' mandatory arbitration agreement, the trial court did not err in granting Kramer's petition to compel arbitration.

Soleimani appears to contend that, even if *some* of her claims were within the scope of the arbitration agreement, the trial court should not have granted the petition to compel because *other* claims were not. We do not agree. Even if we were to accept Soleimani's factual premise that some of her claims did not come within the arbitration agreement, we still could not conclude that the trial court abused its discretion in granting the petition to compel. Pursuant to Code of Civil Procedure, section 1281.2, subdivision (c), the trial court has discretion to order arbitration of claims *even if* there "are other issues between the petitioner and the respondent which are not subject to arbitration." (§ 1281.2, subd. (c); *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977.) As one court has explained: "[T]he presence of a nonarbitrable cause of action is not sufficient by itself to invoke the trial court's discretion to deny arbitration under Code of Civil Procedure section 1281.2, subdivision (c): 'The mere fact that some claims are arbitrable and some are not is surely not the "peculiar situation" meant to be addressed by [Code of Civil Procedure] section 1281.2[, subdivision] (c)[,] according to our Supreme Court.' (*RN Solution, Inc. v. Catholic Healthcare West* [(2008)] 165 Cal.App.4th [1511,] 1521.)" (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1409.)

In the present case, as we have said, Soleimani's complaint unquestionably contained arbitrable claims. Accordingly, the trial court did not abuse its discretion in granting the petition to compel.[4]

---

[4] Soleimani does not contend that the trial court should have sent certain claims to arbitration and reserved others for resolution by the court, and thus we do not reach that issue.

B.      *The Trial Court Did Not Err by Granting Kramer's Petition to Confirm the Arbitration Award*

In addition to urging that the trial court abused its discretion in ordering the parties' dispute to arbitration, Soleimani also contends that the trial court erred in confirming the arbitration award.  For the reasons that follow, Soleimani is wrong.

*Trial court's asserted errors in reasoning:*  Soleimani contends that the order confirming the arbitration award should be vacated because the trial court's reasoning in support of its order was erroneous.  Even if this contention were correct (a conclusion we do not reach), it is immaterial, because our review of the order confirming the arbitration award is de novo.[5]  (E.g., *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1422; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)  Under the de novo standard of review, we "exercis[e] our independent judgment" and "*do not review the validity of the trial court's reasoning.*" (Italics added.)

*Arbitrator's asserted failure to consider material evidence and postpone arbitration hearing:*  Pursuant to Code of Civil Procedure, section 1286.2, subdivision (a)(5), the court must vacate an arbitration award if "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."  Soleimani contends she is entitled to relief under this section, but she cites to no evidence or legal authority in support.  She also failed, prior to the submission of this case on appeal, to provide us with either the transcript of the arbitration hearing or any admissible evidence of her alleged requests to continue.  We therefore have no record on which to consider her claims.  Her claims in this regard therefore are forfeited.  (E.g., *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1509

---

[5]      We do not consider the merits of the arbitration award, however, because Soleimani did not assert any errors beyond those addressed in the following paragraph (i.e., failure to consider material evidence and to postpone the arbitration hearing).

["It is an appellant's duty to present a record from which the appellate court can determine whether there has been error; failure to do so results in affirmance."].)

*Errors alleged on face of judgment:* Soleimani contends that the judgment entered by the trial court is "facially incorrect" because it identifies Kramer as a "cross-complainant" and Soleimani as a "cross-defendant." Soleimani cites no authority in support of her contention that a supposed error of this kind supports vacating the judgment, and we reject it.[6]

*Errors alleged in court's electronic docket:* Soleimani contends finally that the trial court's record "was not properly maintained" and is "rife with errors"—by which she apparently means there are some errors in the trial court's on-line docket. Whatever the merits of this factual contention, it has no bearing on the validity of the judgment entered in this case.

---

[6] We note, moreover, that the text of the judgment correctly reads as follows: "Judgment is entered in favor of Defendant Brian J. Kramer, P.C., in accordance with the Amended Arbitration Award following Court granting Defendant's petition to confirm the arbitration award of April 24, 2013, which is attached hereto as Exhibit No. 1."

16

**DISPOSITION**

The order confirming the arbitration award and judgment are affirmed. Kramer's request for sanctions is denied. Kramer is awarded his appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


KITCHING, J.


ALDRICH, J.