[No. G037641. Fourth Dist., Div. Three. Nov. 28, 2007.]

MARIE L. TITOLO, Plaintiff and Respondent, v.
LUZ ELENA CANO, Defendant and Appellant.

COUNSEL

Pivo, Halbreich, Martin, Wilson & Amo and Scott A. Martin for Defendant and Appellant.

Robert A. Peterson for Plaintiff and Respondent.

OPINION

**FYBEL, J.—**

### INTRODUCTION

Marie L. Titolo sued her former treating physician, Luz Elena Cano, M.D., for breach of fiduciary duty, violation of privacy rights, intentional interference with prospective economic advantage, and negligence. All of Titolo's claims are based on Cano's communications to Titolo's disability insurer that Titolo was not disabled, but was a scam artist and a fraud, and Cano's provision of Titolo's medical file to the disability insurer. Cano petitioned the trial court to compel arbitration of Titolo's claims. The trial court denied the petition on the ground Titolo's claims against Cano were not within the scope of the parties' written arbitration agreement. Cano appeals from that order.

■ We reverse. The parties' written arbitration agreement applies to "any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered." We hold communications between a physician and his or her patient's disability insurer, at the request of the patient, regarding the diagnosis and/or treatment of the patient by that physician, constitutes the rendering of medical services. Therefore, Titolo's claims, which are based on the allegedly unauthorized or improper communication of Titolo's medical records and information to her disability insurer, are covered by the arbitration agreement.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Cano is a clinical neurologist. Titolo was Cano's patient from October 2001 through February 2002. On October 25, 2001, Titolo signed a physician-patient arbitration agreement, which includes, in part, the following language, which Code of Civil Procedure section 1295[1] requires be included in medical arbitration agreements: "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration. [¶] . . . [¶] All claims based upon the same incident, transaction or related circumstances shall be arbitrated in one proceeding. . . . [¶] . . . [¶] NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL."

Titolo had a disability policy with Provident Life and Accident Insurance Company (Provident). On March 1, 2002, Titolo signed an authorization for use and disclosure of medical information, requesting and permitting Cano to disclose Titolo's privileged and confidential medical information to Provident. On the same date, Titolo provided Cano with an attending physician's statement and asked Cano to certify to Provident that Titolo was disabled. Cano declined to sign the form because she was not Titolo's primary treating physician.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

In June 2002, Cano informed Provident that Titolo was not disabled, but that her disability claim was a "scam" and she was a "fraud." Cano also sent Provident a copy of Titolo's medical file. Provident denied Titolo's disability claim.

Titolo sued Cano for breach of fiduciary duty, violation of privacy rights, and intentional interference with prospective economic advantage, all based on Cano's June 2002 communications with Provident. Cano filed a petition to arbitrate. The trial court denied the petition because Titolo "is seeking damages for actions not part of the provision of medical services and the arbitration agreement would not apply."

Titolo later amended her complaint to add a cause of action for negligence, alleging Cano violated the standard of care by failing to take an adequate medical history and by failing to obtain Titolo's medical records from a prior treating physician. Titolo alleged that if Cano had performed those actions competently, she would not have advised Provident that Titolo was not disabled. Cano responded with another petition to compel arbitration. The trial court again denied Cano's petition. The court concluded that the case did not present a claim of professional negligence under section 1295, subdivision (g), since Titolo was not claiming damages due to personal injury or death.[2] Cano timely appealed.

---

[2] Section 1295 reads as follows: "(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' [¶] (b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type: [¶] 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.' [¶] (c) Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor. [¶] (d) Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian. [¶] (e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b), and (c) of this section. [¶] (f) Subdivisions (a), (b), and (c) shall not apply to any health care service plan contract offered by an organization registered pursuant to Article 2.5 (commencing with Section 12530) of Division 3 of Title 2 of the Government Code, or

DISCUSSION

## STANDARD OF REVIEW, BURDENS OF PROOF, AND PUBLIC POLICIES

We review the order denying the petition to compel arbitration de novo because the trial court did not resolve any factual disputes in rendering its decision. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328].)

■ "To determine whether a contractual arbitration clause requires arbitration of a particular controversy, the controversy is first identified and the issue is whether that controversy is within the scope of the contractual arbitration clause." (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1106 [21 Cal.Rptr.3d 875].) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) The evidence may be presented by "affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion." (*Ibid.*)

■ Once the existence of a valid arbitration clause has been established, "[t]he burden is on 'the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute.' " (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406 [18 Cal.Rptr.3d 215].) In other words, "an order to arbitrate a particular

licensed pursuant to Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code, which contains an arbitration agreement if the plan complies with paragraph (10) of subdivision (a) of Section 1363 of the Health and Safety Code, or otherwise has a procedure for notifying prospective subscribers of the fact that the plan has an arbitration provision, and the plan contracts conform to subdivision (h) of Section 1373 of the Health and Safety Code. [¶] (g) For the purposes of this section: [¶] (1) 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider; [¶] (2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 414 [220 Cal.Rptr. 807, 709 P.2d 826].)

In connection with her petition to compel arbitration, Cano submitted a copy of a physician-patient arbitration agreement signed by Titolo and by Cano's authorized representative. Titolo does not challenge the validity of the physician-patient arbitration agreement. Cano has therefore met her burden of establishing the existence of a valid arbitration agreement. The burden thus shifts to Titolo to establish her claims are not subject to the arbitration agreement.

At this point in the analysis, two equally important policies become applicable. First, resolution of disputes through the process of arbitration is favored in this state, and any doubt as to the meaning and interpretation of an arbitration agreement is resolved in favor of requiring arbitration. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1062 [54 Cal.Rptr.3d 837].)

However, "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Therefore, the second policy guiding our decision is that no dispute may be ordered to arbitration unless it is within the scope of the arbitration agreement. "In determining the scope of an arbitration clause, '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation].' [Citation.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 [222 Cal.Rptr. 1, 710 P.2d 833].) "[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested." (*Bono v. David, supra*, 147 Cal.App.4th at p. 1063.)

### The Arbitration Agreement

The arbitration agreement between Titolo and Cano covers "any dispute as to medical malpractice." The agreement defines medical malpractice as "whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered."

Are Cano's actions in communicating with Titolo's disability insurer and providing the insurer with Titolo's medical records, all at Titolo's request,

within the provision of medical services by a physician to a patient? Yes. Communications between physicians and insurance companies regarding the diagnosis and treatment of patients are a necessary part of the provision of medical services to those patients. The practice of medicine today requires close interaction among medical professionals, their patients, health care insurers, and health management organizations. Cano obtained Titolo's medical information by rendering medical services to her. Further, Titolo only requested that Cano communicate with Titolo's insurer because Cano had provided medical services to her. Therefore, the acts of which Titolo complains are medical services provided to Titolo. Titolo herself acknowledged this reality; as explained, *post*, she informed the trial court in another related case that the present case was based on Cano's actions and services as a physician and arose out of actions related to Cano's medical treatment of Titolo.

### INTERRELATIONSHIP BETWEEN THE ARBITRATION AGREEMENT AND SECTION 1295

The trial court concluded, and Titolo argues on appeal, that Titolo's claims against Cano are not within the arbitration provision because section 1295, subdivision (g)(2) defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death," and Titolo does not assert a claim for a personal injury or wrongful death. True, Titolo's first amended complaint does not seek damages for personal injuries or wrongful death.

The dispositive question in this case is: what is the meaning of the language contained in the agreement to arbitrate between Titolo and Cano? The arbitration agreement itself covers "medical services" and its language is pursuant to and in full compliance with the requirements of section 1295. Titolo does not argue otherwise. Indeed, the failure to use the language specified by the statute could render the arbitration provision unenforceable. (See *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 578 [53 Cal.Rptr.3d 887, 150 P.3d 764].) The arbitration agreement does *not* limit its application to cases involving personal injuries or wrongful death, and does not quote from or refer to section 1295, or mention the term "professional negligence." We cannot read more into the parties' arbitration agreement than it provides.

■ Section 1295 applies to "[a]ny *contract for medical services* which contains a provision for arbitration of any *dispute as to professional negligence* of a health care provider." (§ 1295, subd. (a), italics added.) In a separate subdivision, the statute defines professional negligence as "a negligent act or omission to act by a health care provider in the rendering of

professional services, *which act or omission is the proximate cause of a personal injury or wrongful death.*" (§ 1295, subd. (g)(2), italics added.)

But section 1295 also *requires* that an arbitration agreement contain language making the agreement applicable to " 'any dispute as to *medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered.*' " (§ 1295, subd. (a), italics added.) This required language for the arbitration agreement does not use the terms "professional negligence," "personal injury" or "wrongful death."

█ We read section 1295's reference to "medical services" according to its plain meaning. Accordingly, we reject Titolo's argument that the Legislature must have intended that the terms "medical malpractice" and "professional negligence" be used synonymously. As quoted above, section 1295 itself defines "medical malpractice" and "professional negligence" in different ways; thus, the terms are not synonymous. The words actually used in the agreement signed by the patient and the physician control, not other words included in the statute, but not included or required to be included in the contract.

Even if the arbitration agreement had also included the language of section 1295 referring to professional negligence, the statute would not preclude the arbitration agreement pertaining to medical services from applying to Titolo's claims in this case. As long as the arbitration agreement includes the language required by section 1295, as it did here, the parties may broaden their agreement with additional language. (*Reigelsperger v. Siller, supra,* 40 Cal.4th at p. 579.)

### ANALYSIS OF RELATED CASES

█ Our conclusion is supported by *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191–192 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*), in which the Supreme Court held, "whenever an injured party seeks punitive damages for an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such, then the action is one 'arising out of the professional negligence of a health care provider,' and the party must comply with section 425.13(a)."[3] In that case, the plaintiffs had originally sued the

---

[3] Section 425.13, subdivision (a) provides, in relevant part, "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the

defendant for medical negligence and loss of consortium. (*Id.* at p. 185.) The plaintiffs later filed a motion for leave to amend to add claims for fraud and intentional infliction of emotional distress, and to seek punitive damages, based on the same facts as the original complaint. (*Ibid.*) The trial court granted the motion, concluding the procedural requirements of section 425.13 did not apply because the fraud and intentional infliction of emotional distress claims did not relate to a professional negligence claim. (3 Cal.4th at p. 185.)

The Supreme Court disagreed, and remanded the case to the Court of Appeal with directions to issue a peremptory writ of mandate directing the trial court to vacate its order granting leave to amend and to conduct further proceedings under section 425.13, subdivision (a). (*Central Pathology, supra,* 3 Cal.4th at p. 193.) "[I]dentifying a cause of action as an 'intentional tort' as opposed to 'negligence' does not itself remove the claim from the requirements of section 425.13(a). The allegations that identify the nature and cause of a plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided. Thus, a cause of action against a health care provider for battery predicated on treatment exceeding or different from that to which a plaintiff consented is governed by section 425.13 because the injury arose out of the manner in which professional services are provided. By contrast, a cause of action against a health care provider for sexual battery would not, in most instances, fall within the statute because the defendant's conduct would not be directly related to the manner in which professional services were rendered. [Citation.] And, contrary to plaintiffs' argument, section 425.13(a) applies regardless of whether the complaint purports to state a single cause of action for an intentional tort or also states a cause of action for professional negligence. The clear intent of the Legislature is that any claim for punitive damages in an action against a health care provider be subject to the statute if the injury that is the basis for the claim was caused by conduct that was directly related to the rendition of professional services." (*Id.* at p. 192.)

party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier."

Section 425.13 does not include a definition of the phrase "professional negligence." In *Central Pathology*, the Supreme Court determined that the definition used in the various Medical Injury Compensation Reform Act statutes—including section 1295, subdivision (g)(2)—should be read into section 425.13. (*Central Pathology, supra,* 3 Cal.4th at p. 187 ["Although the Legislature did not repeat that definition in section 425.13, we must presume that the Legislature was familiar with existing statutory definitions . . . [and t]herefore, we find that the existing definition was intended to apply to section 425.13" (citation omitted)].)

The Supreme Court continued, in the portion of its opinion key to our analysis of the scope of the words "medical services": "Plaintiffs' cause of action for fraud in this case is directly related to the manner in which defendants provided professional services. The claim emanates from the manner in which defendants performed and *communicated the results of medical tests, a matter that is an ordinary and usual part of medical professional services.* It is therefore governed by section 425.13(a). Plaintiffs' cause of action for intentional infliction of emotional distress is predicated on the same alleged acts as the fraud claim. Therefore, it too is directly related to defendants' performance of professional services and is governed by section 425.13(a)." (*Central Pathology, supra,* 3 Cal.4th at pp. 192–193, italics added.) Thus, communication of medical test results is an ordinary and usual part of a physician's provision of medical services to his or her patient. Under the same analysis, so too is the communication of information between a physician and a disability insurer regarding the patient's diagnosis and treatment at the request of the patient.

*Herrera v. Superior Court* (1984) 158 Cal.App.3d 255 [204 Cal.Rptr. 553] and *Baker v. Sadick* (1984) 162 Cal.App.3d 618 [208 Cal.Rptr. 676] similarly support our holding in this case. In *Herrera, supra,* 158 Cal.App.3d at page 261, the appellate court noted that section 1295's definition of malpractice includes more than negligence, and that a malpractice action may include theories such as battery, breach of contract, and deceit. And, in *Baker, supra,* 162 Cal.App.3d at page 626, the appellate court rejected the defendant physician's argument that punitive damages were not recoverable in a medical malpractice case because section 1295 only permits parties to agree to arbitrate claims of professional negligence, not intentional tort claims: "The provisions of the scrutinized arbitration agreement define[] disputes as to medical malpractice to include medical services which were 'unnecessary or unauthorized or were improperly, negligently or incompetently rendered . . . .' This definition could be construed to embrace more than mere negligence when considered in conjunction with the language of the agreement and section 1295 that '*any* dispute as to medical malpractice' (italics added) is to be submitted to arbitration."

Titolo cites several cases from other jurisdictions to support her argument that the violation of an independent duty to a patient does not constitute medical malpractice. (See *Estate of Sly v. Linville* (1994) 75 Wn.App. 431 [878 P.2d 1241]; *Tighe v. Ginsberg* (N.Y.App.Div. 1989) 146 A.D.2d 268 [540 N.Y.S.2d 99]; *Leach v. Shapiro* (1984) 13 Ohio App. 3d 393 [13 Ohio B. 477, 469 N.E.2d 1047]; *Wyatt v. St. Paul Fire & Marine Ins. Co.* (1994) 315 Ark. 547 [868 S.W.2d 505].) Setting aside the point none of these cases is binding on us, they provide little or no guidance to us because they do not address the key issues in this case. None of these cases addresses whether communications between a physician and his or her patient's disability insurer

regarding the physician's diagnosis or treatment of the patient is the provision of "medical services," or whether our state's statutory definition of "professional negligence" should be read into the arbitration agreement even though the arbitration agreement does not use that term or refer to the statute.

## CONCLUSION

The arbitration agreement in this case applies to "all disputes as to . . . whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered." Communications between a physician and his or her patient's insurer regarding the patient's diagnosis or treatment, when those communications are requested by the patient, are encompassed within the provision of medical services. Titolo's claim, at its essence, is whether Cano improperly communicated with Titolo's insurer regarding Cano's diagnosis and treatment of Titolo. Therefore, the trial court erred by denying the petition to compel arbitration.

Whether or not the trial court erred by failing to consider the petition to compel arbitration with respect to the first, second, and third causes of action need not be decided. The arbitration agreement provides: "All claims based on the same incident, transaction or related circumstances shall be arbitrated in one proceeding." All of Titolo's claims against Cano are based on the same facts and arise out of the same action—Cano's transmission of information to Titolo's disability insurer regarding Cano's diagnosis and treatment of Titolo.

## SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE

Cano filed a supplemental request for judicial notice, asking this court to take judicial notice of five documents filed in a separate litigation between these parties entitled *Titolo v. Cano* (Super. Ct. Orange County, No. 06CC09915).[4] The documents are all records of a court of this state, and we may take judicial notice of them. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) We do so in connection with Titolo's recognition that Cano was providing medical services, *ante.*

Cano also offers these documents in support of an argument, raised for the first time in her reply brief, that we should refuse to consider Titolo's

---

[4] The documents of which Cano asks us to take judicial notice are (1) the first amended complaint for damages; (2) the notice of motion and motion to strike the first amended complaint, and memorandum of points and authorities; (3) memorandum of points and authorities in opposition to the motion to strike the first amended complaint; (4) the minute order dated February 5, 2007; and (5) the minute order dated March 13, 2007.

respondent's brief under the principles of judicial estoppel, because Titolo has taken inconsistent positions in two separate cases. Given our holding, we need not reach this issue.

## Disposition

The order is reversed. Appellant to recover costs on appeal.

Sills, P. J., and Ikola, J., concurred.