Filed 9/14/15  Hsu v. Prime Healthcare Services III CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FRANK J.Y. HSU, | |
| Plaintiff and Respondent, | E060953 |
| v. | (Super.Ct.No. CIVRS1307631) |
| PRIME HEALTHCARE SERVICES III, LLC et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed.

Law Offices of Herbert Hafif, Greg K. Hafif, and Michael G. Dawson for Defendants and Appellants.

Doll Amir & Eley, Michael M. Amir, Mary Tesh Glarum, Lloyd Vu, and Carly Steinbaum for Plaintiff and Respondent.

Defendant Prime Healthcare Services III, LLC (Prime) allegedly owns and operates two hospitals, Montclair Hospital Medical Center (Montclair) and Chino Valley

1

Medical Center (Chino Valley).  It retained Dr. Frank J.Y. Hsu to act as medical director for Montclair.  Not quite five years later, it terminated him.  Dr. Hsu then filed this "whistleblower" action against Prime and other entities, claiming that he was terminated because he had opposed inappropriate patient care practices — not at Montclair, but at Chino Valley.

The written agreement between Prime and Dr. Hsu required arbitration of "[a]ny dispute or controversy concerning *non-professional* issues arising under, out of, in connection with, or in relation to this Agreement, or any breach thereof, or in connection with the termination of this Agreement . . . ."  (Italics added.)  The trial court denied defendants' motion to compel arbitration.  Defendants appeal.

We will hold that this action presents "professional" issues, rather than "non-professional" issues, and thus it is not within the scope of the arbitration provision.  Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the complaint and from the evidence introduced in connection with the motion to compel arbitration.  (See *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 6.)  We have omitted the evidence relating to whether the arbitration provision was procedurally unconscionable, as it is unnecessary to the grounds on which we resolve the appeal.

Prime owns and operates both Montclair and Chino Valley. Dr. Hsu is a well-regarded and well-qualified local pulmonologist and internist.

In 2008, Montclair and Dr. Hsu entered into a written "Medical Director Agreement" (Agreement) by which Montclair retained Dr. Hsu to act as its medical director. The Agreement could be terminated by either party, without cause, by giving 30 days' written notice. The Agreement included the following:

"ARTICLE VII

"DISPUTE RESOLUTION

"7.1 Disagreements on Professional Standards. Any disagreements arising under this Agreement regarding the standard of professional practice or the character of service furnished in the Hospital may be submitted to the Medical Staff Executive Committee by Provider or Hospital for recommendation. The recommendations of the Medical Executive Committee shall be forwarded to the Governing Board of the Hospital for final decision. The decision of the Governing Board shall be binding on the parties hereto.

"7.2 Arbitration on Non-Professional Disputes. Any dispute or controversy concerning non-professional issues arising under, out of, in connection with, or in relation to this Agreement, or any breach thereof, or in connection with the termination of this Agreement, shall be determined and settled by arbitration in Los Angeles County pursuant to the rules of Judicial Arbitration & Mediation Services ('JAMS') using an arbitrator approved by Provider and Hospital. If Hospital and Provider cannot agree on an arbitrator, then such arbitrator shall be selected by the presiding judge of the San

3

Bernardino County Superior Court. Each party shall initially pay one-half (1/2) of the expenses and fees of the arbitrator and costs of arbitration, provided however, that the prevailing party shall be entitled to reasonable attorney's fees and costs. Any demand for arbitration shall be filed in writing with the other party within a reasonable time after the dispute in question has arisen and before the time when commencement of a lawsuit would be barred by any applicable statute of limitation. Each party shall have the right to conduct discovery, and any discovery dispute shall be resolved by the arbitrator."

Meanwhile, Dr. Hsu was also the head of a medical group called Inland Pulmonary Medical Group (IPMG). According to the complaint, Chino Valley had a "scheme" to increase its profits by admitting IPMG's patients "needlessly" instead of "putting [them] on observation status." Dr. Hsu remonstrated with representatives of Prime "about how the current policies at Chino Valley failed to adequately protect patient care." In March 2013, IPMG — with Dr. Hsu's assistance — filed an action alleging that Chino Valley was "putting corporate profits ahead of patient safety by, *inter alia*, failing to call IPMG physicians when their patients present [in] the emergency room and/or are admitted to the hospital."

In April 2013, Montclair terminated Dr. Hsu. He alleges that he was terminated in retaliation for IPMG's lawsuit regarding Chino Valley and "for reporting concerns about policies and procedures at Chino Valley, refusing to violate statutory obligations and requirements at Chino Valley, and strenuously advocating for appropriate patient care and procedures." In fact — at least according to his complaint — officers of Prime and

4

of Montclair admitted to him that he had been fired because he had sued one of Prime's hospitals.

## II

## PROCEDURAL BACKGROUND

In 2013, Dr. Hsu filed this action against Prime, and also against Prime Healthcare Services, Inc. (Prime Healthcare) and Veritas Health Services, Inc. (Veritas). He asserted causes of action against all defendants for retaliation by a health facility against a whistleblower (Health & Saf. Code, § 1278.5) and for retaliation against a health care practitioner (Bus. & Prof. Code, § 510). In addition, he asserted a cause of action for breach of the covenant of good faith and fair dealing, solely against Prime, and a cause of action for intentional interference with contract, solely against Prime Healthcare and Veritas.

In December 2013, defendants filed a motion to compel arbitration. In his opposition to the motion, Dr. Hsu argued that the action was not within the scope of the arbitration provision and that the arbitration provision was unconscionable.

After hearing argument, the trial court denied the motion, stating three alternative grounds. First, it ruled that Dr. Hsu's claims were not within the scope of the arbitration provision. Second, it ruled that the arbitration provision was substantively and procedurally unconscionable. Third, it ruled that the arbitration provision violated the requirements for an agreement to arbitrate unwaivable statutory rights as set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83.

5

## III

## THE SCOPE OF THE ARBITRATION PROVISION

Defendants contend that the trial court erred by ruling that Dr. Hsu's claims in this action are not within the scope of the arbitration provision.

"When deciding whether the parties agreed to arbitrate a dispute, courts generally apply ordinary state-law principles of contract interpretation. [Citation.]" (*Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 659.) "'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'" [Citations.] In determining the scope of an arbitration clause, "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation]." [Citation.]' [Citation.]" (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1523.)

"'[T]he burden is on "the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute."' [Citation.] In other words, 'an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' [Citation.]" (*Titolo v. Cano* (2007) 157 Cal.App.4th 310, 316-317.)

6

"'When a trial court's interpretation of a written agreement is appealed and no conflicting extrinsic evidence was admitted, the interpretation of the contract is a question of law which we review de novo. [Citations.]' [Citation.]" (*Rancho Pauma Mutual Water Company v. Yuima Municipal Water District* (2015) 239 Cal.App.4th 109, 115.)

The arbitration provision — section 7.2 of the Agreement — applied to "[a]ny dispute or controversy concerning non-professional issues arising under, out of, in connection with, or in relation to this Agreement, or any breach thereof, or in connection with the termination of this Agreement . . . ." Defendants argue that this is a dispute "in connection with the termination of th[e] Agreement." Apparently they read the language this way:

"Any dispute or controversy concerning":

    a. "non-professional issues arising under, out of, in connection with, or in relation to this Agreement, or"

    b. "any breach thereof, or"

    c. "in connection with the termination of this Agreement . . . ."

However, if "concerning" precedes each of these three alternatives, so that the second alternative is "Any dispute or controversy concerning . . . any breach thereof," then the third alternative would read, "Any dispute or controversy concerning . . . in connection with the termination of this Agreement," which makes no sense. And if "concerning" is to precede only the first alternative, then the second alternative would

7

read, "Any dispute or controversy . . . any breach thereof," which likewise makes no sense.

Rather, the only possible way to read it is:

"Any dispute or controversy concerning non-professional issues":

    a. "arising under, out of, in connection with, or in relation to this Agreement, or any breach thereof, or"

    b. "in connection with the termination of this Agreement . . . ."

Accordingly, a dispute is arbitrable only if it is "concerning *non-professional issues* . . . in connection with the termination of this Agreement . . . ." (Italics added.)

Defendants' opening brief is not particularly helpful because it does not address the meaning of "non-professional issues." Dr. Hsu specifically argued below that this case is not within section 7.2 because it involves professional issues. The trial court apparently agreed. Nevertheless, defendants did not even attempt to explain why this was error. Indeed, in this part of their argument, defendants did not even quote the words "non-professional"; they glided over them using an ellipsis. We may uphold the trial court's ruling on the sole ground that defendants failed to challenge this aspect of the ruling. (*In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 817 [argument not raised in opening brief is forfeited] [Fourth Dist., Div. Two].) Nevertheless, we will also discuss the issue on the merits.

Section 7.1 of the Agreement provided that disputes "regarding the standard of professional practice or the character of service furnished by the Hospital" could be (but

8

did not have to be) submitted initially to the Medical Staff Executive Committee for a recommendation and then to the Governing Board for final decision. By contrast, section 7.2 provided that disputes "concerning non-professional issues" must be submitted to JAMS for arbitration.

It is apparent that sections 7.1 and 7.2 of the Agreement were intended to be mutually exclusive. In the trial court, Dr. Hsu argued otherwise. In this appeal, however, he appears to have abandoned this argument. And wisely so. It would make no sense to provide that a given issue "may be" submitted to the Governing Board for "final decision" yet also "shall be determined and settled" by JAMS.

Section 7.1, then, defines "professional" issues. It specifies that they are issues regarding either (1) "the standard of professional practice" or (2) "the character of service furnished by the Hospital." Evidently the thinking was that these are matters in which the Medical Staff Executive Committee has some expertise. (See *Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 619-620 [requiring exhaustion of internal remedies "accords recognition to the 'expertise' of the organization's quasi-judicial tribunal"].) Any issue that is not within section 7.1 is "non-professional" within section 7.2. In other words, "non-professional" is a residual category.

Defendants do argue (in their reply brief) that "professional" disputes are limited to disputes over practices or services *at Montclair*; thus, they do not encompass disputes over practices or services *at Chino Valley*. This presumes that in section 7.1, "furnished

9

by the Hospital" modifies *both* (1) "the standard of professional practice" *and* (2) "character of service." We disagree. One may "furnish" service, but one does not ordinarily "furnish" practice. We also note that the Medical Staff Executive Committee would have the expertise to adjudicate disputes over the standard of professional practice at other hospitals, not just at Montclair. Thus, "professional" encompasses disputes "regarding the standard of professional practice" anywhere.

Dr. Hsu is claiming that defendants terminated him because of his efforts to advocate for proper patient care at Chino Valley — initially by remonstrating with representatives of Prime and ultimately by helping IPMG to sue Chino Valley. This implicates his "standard of professional practice." In addition, it implicates defendants' "standard of professional practice" in the operation of Chino Valley.

We also note that Dr. Hsu's whistleblower cause of action under Business and Professions Code section 510 necessarily relates to his standard of professional practice. This section was enacted "to provide protection against retaliation for *health care practitioners* who advocate for *appropriate health care* for their patients." (Bus. & Prof. Code, § 510, subd. (a), italics added.) It declares it to be against "the public policy of this [s]tate" to "terminate an employment or other contractual relationship with or otherwise penalize a health care practitioner principally for advocating for appropriate health care *consistent with that degree of learning and skill ordinarily possessed by reputable health care practitioners with the same license or certification and practicing according to the applicable legal standard of care . . . .*" (*Id*., subd. (c), italics added.) In other words, a

10

health care practitioner can claim protection under Business and Professions Code section 510 if and only if he or she is acting in accordance with applicable standards of professional practice.

In sum, then, this case constitutes a "disagreement[] arising under th[e] Agreement regarding the standard of professional practice" within the meaning of section 7.1. It follows that it is *not* a "dispute . . . concerning non-professional issues" within the meaning of section 7.2. Accordingly, the trial court correctly ruled that this case is not within the scope of the arbitration provision.

In light of this holding, we need not and thus we do not discuss whether the trial court correctly ruled that the arbitration provision was unconscionable. We also do not discuss whether it correctly ruled that the arbitration provision impermissibly impacted unwaivable statutory rights. Finally, we do not discuss whether Prime Healthcare and Veritas would be entitled to enforce the arbitration provision.

IV

DISPOSITION

The order appealed from is affirmed. Dr. Hsu is awarded costs on appeal against defendants.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

11

                                    RAMIREZ
                                                    P. J.

We concur:


HOLLENHORST
                    J.

KING
                    J.


12